JOEL VAUGHAN, Plaintiff in Error, v. JOHN THOMPSON,
Defendant in Error.

### ERROR TO MASSAC.

If a debtor has no more property in his hands than the law exempts from execu-
tion, he is not required to turn out one piece of it for an officer to levy upon, as
the condition upon which he may retain the residue.
A mortgage of property by a person who does not hold more than the amount ex-
empted by law, is not in fraud of creditors.
Property exempted by law may be sold or exchanged by the debtor, without sub-
jecting it or its equivalent to execution.
A mortgagor in possession of property exempt from execution, may maintain an
action against an officer who improperly levies thereon.

This suit was instituted before a justice of the peace to re-
cover the value of a mule seized and sold by defendant, as a
constable of Massac county, which mule was alleged by plain-
tiff below, to be exempt by law from levy and sale on execution.

The evidence showed that at the time defendant below sold
the mule in question on an execution against Vaughan, as also
at the time the execution was served on Vaughan, he claimed
the mule as being exempt from execution, and notified the offi-
cer of his claim at the time ; that Vaughan was the head of a
family and residing with the same; that Vaughan was poor and
had but little personal property—the mule worth thirty or thir-
ty-five dollars, an old mare not worth anything, one or two
cows and a few hogs, cows worth ten dollars each, hogs in all
worth about fifteen dollars ; that Vaughan classed as a farmer in
the community, and the mule was suitable to his condition in
life ; that defendant below went on and sold the mule at con-
stable's sale.   It appeared by the evidence that Vaughan, some
time before this, had bought a wagon of one Smith at eighty
dollars, to be paid in equal payments at six and twelve months,
in cord wood, to be delivered on the bank of the Ohio river at
Metropolis, and that to secure said payment Vaughan had agreed
with Smith that Smith should hold a lien upon the wagon to se-
cure the payment, and in case of failure, that Smith was to have
the wagon back again, and for the wear and tear of the wagon
during the year, in case of failure in payment as agreed, then
Smith was to have the mule in question, and that there was a
writing expressing this contract; that the wagon was delivered
to Vaughan, and he had been using it some time, say between
six and twelve months, at the time the mule was levied on and
sold by Thompson ; that the possession of the mule never
passed from Vaughan to Smith up to the time it was seized and
sold by Thompson.

This cause was tried before PARRISH, Judge, and a jury, at October term, 1855, of the Massac Circuit Court, and resulted in a verdict for the defendant. The plaintiff below brings the cause to this court for review.

J. JACK, for Plaintiff in Error.

T. G. C. DAVIS, for Defendant in Error.

SCATES, C. J.　There is error in the refusal of instructions asked by plaintiff, and in part of those given for defendant as well as in refusing a new trial.

It does not appear from the evidence that plaintiff had any property subject to be levied on by this execution. The whole, not specifically exempted, is shown to be worth fifty-five or sixty dollars—the latter sum, by valuing the mule at thirty-five, the hogs at fifteen and the cow at ten dollars. Where a debtor has no more than is specifically exempted, or may be claimed as suitable to his condition, the law will not require him to turn out one piece thus secured to him, as the condition upon which he may be allowed to assert his claim to another. Nor do I recognize the position that he forfeits his right to such property by mere prevarication, pretending that he has, when he has not other property. If the officer will sell, under the belief and pretence that the debtor has other property which he neglects or refuses to offer in lieu of that taken, or because the debtor neglects or refuses to bring it to him at a particular time and place, he must sell at his own peril of the truth as it may be shown to be. The defendant was clearly, distinctly and repeatedly notified by plaintiff and his wife that he claimed the mule under the law, and as distinctly informed by the defendant that he would sell the mule if plaintiff did not bring him other property in lieu of it. There is no principle settled, either by the facts, or in the argument of the court, in *Cook* v. *Scott,* 1 Gil. R. 333, which would require plaintiff to comply with this demand as a condition of releasing the mule, for the simple reason that plaintiff had no more property than he could exempt by claim. If the defendant doubted this, it was his duty to have made inquiry and set apart to the value protected by law, respecting the plaintiff's selection, which, for any proof in this record, he had neither waived, abandoned or lost the right to make. He chose to disregard the plaintiff's rights in the matter then, and must now meet and answer to the true state of facts as presented on this trial, and that clearly appears to be, that all the property, including this mule, was worth only about

the amount he was entitled to hold exempt from levy and sale. This principle is clearly recognized and sanctioned in *Mc Clusky* v. *Mc Neely*, 3 Gil R. 578.

The defendant has partly placed his defence upon the ground of a fraudulent sale of the mule to Smith, with a view to hinder and delay Hanna in the collection of his debt, and relies upon the case of *Cassall* v. *Williams*, 12 Ill. R. 387. There is a similarity in the facts, but there is this essential difference: that judgment was upon the ground that the property was shown to belong to another and not to the debtor; and the court say that may be shown by a fraudulent sale before, or a *bona fide* sale after, the delivery of execution.

Neither of those facts exist in this case. There has been no sale of the mule to Smith. The transaction is shown to have been a mortgage. But whether a sale or a mortgage, it could not have been fraudulent as to Hanna, as the property was not subject to sale for his debt, and could not be, while plaintiff possessed less than sixty dollars worth. I presume a debtor may sell or dispose of, as he thinks most conducive to his interest, such property as is secured to him, free and exempt from the executions and claims of creditors. I do not construe the law as requiring him to keep it in kind, and withdrawing its protection the moment it is disposed of for such articles as varying circumstances may make suitable, or necessity may render indispensable to the wants, maintenance, support or relief of the debtor's family. It might become indispensable to exchange such property for bread or medicine, as well as advantageous in a general view of bettering his condition by converting its value into something more suitable to provide a home, furnish his family, or prosecute his livelihood. But no matter how urgent the debtor's necessities might be, he could not sell, if creditors could take the consideration immediately, nor could any one buy, if the property became liable in their hands by withdrawal of the debtor's protection of it. Such would not, I think, be a fair construction of the act, nor a reasonable limit to its protection. He may dispose, as he deems for his interest, of all such property upon which creditors have no claims for payment, while it continues exempt by his continuing destitution. But it may, I should think, become again subject to levy by his subsequent acquisition of more property than is so exempted while he retained the same, so once under protection; and this would subject him to another, or new election.

Now if this view be correct, I do not see how a sale or mortgage of property thus exempted can become fraudulent to those who have no right to levy upon or sell it for their debts. Such

was the condition of the mule, and the mortgage of it to Smith could not be a fraud upon, or hinder, or delay Hanna in collecting his debt by sale of it, when he had no such right, whether it was mortgaged or not, while plaintiff remained owner of no more than was so exempt. The question might be changed, if he were shown to be covering sixty dollars worth of other property by exemption and this by mortgage. Then, indeed, a *bona fide* mortgage, as this appears to be, might become fraudulent as to creditors by the actual possession of the mortgagor, according to the principles settled in *Thornton* v. *Davenport et al.*, 1 Scam. R. 296; *Kitchell* v. *Bratton*, id. 300. The mortgage here is spoken of as being in writing, but is not set forth in the record, and is not shown to have been acknowledged and recorded as required by the statute. Rev. Stat. 91. So it is not shown to constitute any title in Smith, or hindrance in law in Hanna's way, if the property levied upon was liable to his execution. But it is not liable, because exempt by the statute protection, and therefore he cannot complain of fraud in mortgaging property not liable for satisfaction of his debt.

But defendant has a right to urge in his defence that plaintiff has parted with his property, and is not now, as owner, entitled to sue for this penalty. Plaintiff's statements that Smith owned the property, and that it was mortgaged to Smith, were admissible, and were in evidence. But while they were thus made evidence, there is no circumstance to constitute them an estoppel upon him, to now assert by proof, and insist upon the truth of the matter as to Hanna. The truth appears to be that the mule was mortgaged to Smith as additional security for the payment for the wagon, plaintiff continuing in possession of the mule. While the mule remains exempt from execution for want of other property worth sixty dollars, we think plaintiff, as mortgagor in possession, may sustain this action of trespass for levying upon and selling it.

Mortgagors of land, in possession, are regarded as the true and real owners of the estate, and their equity is liable to sale on execution. *Fitch* v. *Pinckard*, 4 Scam. R. 83. The mortgagor of personalty in possession must have at least a like and equal interest where the mortgage is duly recorded, and the absolute property where it is not, so far as creditors and subsequent purchasers are concerned, when liable to execution. The mortgagor's interest would be of little value to him under such circumstances if he could not maintain the usual actions for its protection. The application of the principles here laid down will show that the refusal of the second, eighth, ninth and tenth, and the modification of the sixth, instruction asked for by the plaintiff were erroneous; and so the first, fifth and seventh

instructions asked for and given to defendant should have been refused.

Judgment reversed and cause remanded for new trial.

*Judgment reversed.*